Good morning, Your Honors. May it please the Court, Joshua Feinzig, Pro Bono Counsel for Petitioner Mr. Yonis Afrah. I'd like to reserve three minutes for rebuttal. Since this case was briefed in 2019, the issues have crystallized. Here's where things are. Could you lower the microphone a little bit so that I can hear you better? Absolutely, Your Honor. So we challenged the Board's determination both as to Mr. Afrah's removability and as to his inadmissibility. The Board determined that Mr. Afrah is removable by virtue of having committed an offense relating to obstruction of justice by way of California Penal Code Section 136.1b1, that's Subdivision B, which distinguishes this case from the one just heard. The Board also determined that Mr. Afrah is inadmissible because he had been sentenced to a total of over five years of imprisonment. The Board erred in both respects, and we'd like to start with the question of removability. After Pugin and Cordero Garcia, our removability claim has narrowed to a very important issue that, respectfully, to Judge Koh's point, the Ninth Circuit has not yet decided, and that is the question of whether the conduct or the actus reus of merely dissuading a witness from reporting a crime is broader than the conduct prohibited by the Federal definition of obstruction. It clearly is. B-1 covers dissuasive speech writ large. It does not require that the speech be accompanied by force, threat, coercion, compulsion, or any other aggravating quality. It doesn't have to have a pending proceeding, and there is no malice requirement. But 18 U.S.C. 1512 also prohibits whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades. The actus reus at 1512d, which I believe Your Honor is referring to. I'm sorry. Say that one more time. The actus reus at 1512d, which I believe is what you're correct. I'm — yeah. From attending or testifying in an official proceeding. Yes. Other language about hindering, delaying, or preventing the communication. It just seems like there are other Federal statutes that explicitly or certainly implicitly cover dissuasion. So 1512d covers intentional harassment. Harassment refers to a very distinct set of conduct from mere dissuasion. B-1 covers any dissuasive speech act with the intent of influencing a witness from reporting a crime. That could be a driver to another driver after a fender bender. Can we just settle this off the books? That could be a friend to another after observing shoplifting or narcotics use. It's better not to call the police. Those kinds of instances, those kinds of actions are not intentional harassment as 1512d. It was a State court case where somebody would have been prosecuted for the examples that you give. So I would refer the Court first to Wahidi. We would also refer the Court to Brackins. And I'm happy to discuss the conduct at issue in those cases in just a moment. But at the outset, it is important to note that the actual — that we do not need to demonstrate an actual instance of prosecution under the categorical approach. The Supreme Court and this Court have been very clear. In Escobedo-Quintana, for example, the Supreme Court said that the Court needs to reason from, quote, the minimum conduct covered by the plaintext of a State law. The Court also said that it's the least conduct that could be criminal under a State law that comes into the categorical approach analysis. The Supreme Court echoed that point in Taylor, a 2022 categorical approach case. A medical possibility. It has to be a real possibility that someone would actually be prosecuted for that. Let me ask you — I can't hear you. I'm sorry. Go ahead. Go ahead. I hear you. I couldn't hear the judge. Thank you, Your Honor. So first, it has been a real — empirically, there have been prosecutions. Again, Wahidi was a case where a defendant approached a witness at a mosque after a religious ceremony, apologized for the assault that had previously occurred, and asked if the witness would be open to some kind of conflict mediation alternative within the Muslim tradition. The witness did not experience that as a threat. There was no harassment. There was no compulsion. In fact, the witness asked the prosecution if they could drop the case as a result of being entreated to such an alternative resolution. And it was only then that the prosecutor decided to prosecute under B-1. In footnote 3 of Cordero-Garcia, the Ninth Circuit said that any argument that dissuading a witness would render the crime broader would be unavailing. One who intends to dissuade a witness or victim from reporting a crime necessarily intends it — intends to prevent that report. Yes, Your Honor. But the question of whether the conduct of dissuasion is a categorical match was not ventilated in Cordero-Garcia. The Court was very clear that the Petitioner in that case did not raise this argument. The Petitioner had only raised — Right. But they still addressed the argument, though. Well, we — They said in any event, such an argument would be unavailing. And respectfully, that is footnoted dicta that is regrettably incorrect. And that's because the — in analyzing whether the conduct of mere dissuasion is a match for obstruction of justice, there are two to three considerations that the Court must run through that are outlined in Pugin and that are also outlined in Esquivel-Quintana and other categorical approach cases. That includes looking to Federal law, Your Honor, reference 1512d. Again, that 1512d just criminalizes or criminalizes intentional harassment, which is a much more severe kind of act than mere dissuasion. In fact, the Board did not rely on 1512d. It only relied on 1512b as the relevant analogy. 1512b criminalizes corrupt persuasion of a witness. And this Court and the Supreme Court have been unequivocally clear that corrupt persuasion of a witness is fundamentally different from mere persuasion. We direct the Court to Arthur Anderson, where the Court said that corrupt persuasion refers to bribery. It refers to corrupting a witness. Mere dissuasion, as criminalized under B-1, is not corrupt persuasion, nor is it intentional harassment. So Congress has never criminalized mere dissuasion of a witness. Moving to the State level, and this is a crucial point that we hope the Court takes away from today, in 1996, when the aggravated felony provision relating to obstruction of justice was enacted by Congress, there were very, very few states that criminalized mere dissuasion of a witness. There were only three. We draw that number from the Solicitor General's brief in Pugin. That's footnote 17, page 40, the Solicitor General's brief. Only three states criminalized mere dissuasion of a witness. That includes California in 1996. So if mere dissuasion was not even widely considered a crime in 1996, much less a crime relating to the obstruction of justice, it is not possibly a categorical match. Now, to your — to the previous question from Judge Ceasar. Are you claiming that Mr. Afro was convicted only for dissuasion of his girlfriend when he said, if you get out of the closet, I'll kill you? Respectfully, the underlying conduct is of no appease to the categorical analysis. Kennedy, but if we go to the modified categorical approach, what's your position? The modified categorical approach is not applicable here. The immigration judge was very clear about that. The board did not invoke the modified approach. And that's because the actus reus of B-1, dissuasion or prevention, it's not — it's not separable. A jury does not need to determine whether a particular offense conduct is dissuasion as opposed to prevention. So certainly, the modified categorical approach does not operate in this case. Now, to Judge Koh's previous question and what I've heard from Your Honors more generally as to whether California has, in fact, prosecuted such instances of mere dissuasion, again, we direct the Court to Ahidi and to Bracken. In both of those cases, which postdate the case Navarro, which I imagine the government will be relying upon, the California Court of Appeals explained that the legislature was inclined to encourage the reporting of crimes, quote, encourage the reporting of crimes. So the legislature was very intent on criminalizing mere dissuasion, and the underlying conduct in those cases reflects as much. And in any event, if — we don't think that empirical patterns of prosecution are relevant under the categorical approach. Again, the Court was very clear about this in Esquivel-Quintana. This Court, in the first Cordero-Garcia decision, in citing Esquivel-Quintana, along with the 2022 Supreme Court decision Taylor, explained that it — there's no rationale. Sotomayor, I would say, so this is the crux of our case. We certainly other — we also raise an inadmissibility argument, which I'm happy to turn to, but we do think that the Actus Reis question of B-1 is a very important one. If B-1 comes in to relating to obstruction of justice, then everything comes in. B-1 criminalizes mere dissuasion of a witness, a driver to another driver, a shoplifter to a shopkeeper, please don't call the police, my children need me. Those are acts that are clearly criminalized under B-1, which, again, only criminalizes and requires mere dissuasion, that is, speech acts, with the intent of influencing the juror. Kagan, in your 10 minutes, you're spending 10 on an issue where the Ninth Circuit said that 136 — pardon me, 130.1B-1 is a categorical match. May the — address the argument that you're raising, albeit, I agree, in a footnote dicta. I don't know if that's the best use of your time, but you're welcome to continue on this point, if you'd like. I'd like to turn to inadmissibility in just a moment. But the final point I would make about the footnote is that it's simply one sentence that relating to is broad, and we absolutely recognize as much. Relating to obstruction of justice extends the generic — beyond the generic definition. But again, the question is whether in 1996 it was widely understood that obstruction of justice included mere dissuasion. The States did not think so. Only three States criminalized mere dissuasion, and the Federal government has never criminalized mere dissuasion. Now, as to the question of inadmissibility, we argue that the 2010 imposition of two years of incarceration should not count to the — to the overall calculation as to how many — Kennedy. The sentence was suspended, was not imposed. Winsor. Respectfully, Your Honor, the — there — the sentence was only imposed in 2010. There was no suspension — there was no suspended sentence in 2009, which is — only probation was imposed in 2009. You can't get probation unless you suspend the sentence. We don't believe so, Your Honor. There's a very — there's a very important distinction between suspending a two-year sentence, putting a defendant on probation, and then executing on that suspended sentence, and merely imposing probation, and then imposing a sentence on the back end after probation is violated. The latter is what happened in this case. When — no. When a sentence is stated and suspended pending probation, that sentence is entered at the time of — of the conviction. It's not entered at the — at the breaching of the probation. Only — in this case, only three years of probation was entered at the time in 2009. The sentence — the sentence of two years — Because the sentence was suspended. Respectfully, Your Honor, no. There was no suspended sentence. I'll check that. Occasionally, judges will impose a sentence of incarceration, then suspend it, and then upon the violation of probation, execute on the suspended sentence, which, by the way, is subject to a very different evidentiary standard than in the case of Mr. Garcia, where it's merely probation imposed. And then after a violation of probation, the judge goes through the motions of imposing a sentence. I'm looking at ER1529. It's the judgment in that case. And it says the two-year sentence is for count 2, which is a violation of Penal Code 12-316B1. That was the principal count. That's what it's labeled. So clearly, that was the sentence for the offense of which Mr. Afra was convicted.  I see my time is running and would like to reserve. But just to answer Judge Koh's question, we are doing the — And then I'm looking at California Rule of Court 4.435. Now, it does have the imposition of sentence was previously suspended, but it says the length of the sentence must be based on the circumstances existing at the time supervision was granted, and subsequent events may not be considered. In selecting the base term or in deciding whether to strike any additional punishment for enhancements charged and found. So I'm in agreement with Judge Bea. Your client got leniency, could have gotten sentenced to two years originally, but was given probation. But when you violate the probation, then the sentence can be imposed, not suspended. Yes, Your Honor. And there's an important distinction. The fact that he was given leniency is relevant. When Congress was counting up sentences, counting up years of incarceration, it was probing what was imposed for the offense. When a defendant is merely given probation, that reflects a — But he wasn't merely given probation. He was given two years' sentence suspended and given probation so that he wouldn't have to serve the two years. I used to do that in Superior Court in San Francisco all the time. Absolutely, Your Honor. Our argument is that there is a distinction between no sentence imposed — Well, how do you address the factual record here from the State court, what the State court did here? So we think what's — and I'll get to that in just a second. We think what's important is what the immigration judge said. Now, there's a — just for what it's worth, there is a jurisdictional question as to whether those kinds of State court documents can even be considered after Patel. But in any event, what the State court did for all intents and purposes is it did not impose a sentence in 2009 of incarceration. It imposed — I mean, you say all intents and purposes, but we look — we just — Judge Cote, I just read the document of what the State court did, not intents and purposes. It's what it did. So if I might direct the Court to the definition of sentence in the INA, I see my time is running. I would love to answer the question if — Go ahead. The definition of sentence in INA — in the INA is the period of incarceration regardless of any suspension of the imposition or execution of that imprisonment or sentence. We read that to set up two grammatically parallel possibilities. It's the suspension of the imposition of imprisonment, or it's the suspension of the execution of a sentence. Neither of those occurred in this case. The government wants to read that to set up four possibilities, including the suspension of the execution of imprisonment, which doesn't make sense. No one speaks of imprisonment as being executed. It's a sentence of imprisonment that's executed. And in this case, there was no sentence imposed that was thereupon 2010 later executed. It was only probation that was imposed as of 2009. And the document from the sentencing court doesn't — doesn't suggest otherwise. Thank you.  Good morning, Your Honors. May it please the Court, Stephanie Hennis for Respondent. The petitioner in this case is a known gang member and career criminal who began his criminal conduct about seven months after he entered the United States. In 2009, he was convicted of violating California Penal Code 136.1b1, which was his sixth criminal conviction. As this Court has pointed out throughout the morning, this Court has already held that this crime constitutes an offense relating to obstruction of justice, which is an aggravated felony and unquestionably renders the petitioner removable. As relief from removal, the petitioner sought adjustment of status, but the agency denied his application because he was inadmissible for having two or more convictions with sentences of confinement of five years or more. He received a three-year prison sentence for the conviction for dissuading a witness and a two-year prison sentence for his violation for unlawfully possessing ammunition. And the board relied only on this ground for denying adjustment of status. So the Court — The two years was for what? His violation of California Penal Code 12316b1, which is — Ammunitions. Unlawfully possessing ammunition. Exactly, Your Honor. Can you address their argument about the actus reus and that footnote 3 in Cordero Garcia's dicta, and it's wrong? Sure. And the dissuasion argument. Okay. So a few aspects of this. First of all, the government does take the position that Cordero Garcia adequately addressed this issue. This Court can't overrule another panel. The Court in that case did address the question of whether a petitioner could raise an argument that dissuading would be something that would take this act outside of being an offense related to obstruction of justice. And it said the answer to that was no. I would also like to point out that much of what — Dicta? It was not dicta. It was required. So the Court in the — in Cordero came to the conclusion that there is a categorical match between 136.1b1 and an offense relating to obstruction of justice. In order to reach that decision, it had to analyze both statutes and come to the conclusion that it qualified as an obstruction of justice aggravated felony. This was not — Cordero Garcia was not looking at whether a certain side had met their burden of proof and said, oh, well, you know, weighing the options here, we — we find that this side didn't meet their burden. The Court explicitly held that the statute in question here is an obstruction of justice aggravated felony, and the Court should not and cannot revisit that here. I would like to point out that while the petitioner has raised in a letter to this Court the claim that they raised this lengthy argument in their briefing to this Court, they're talking about — referred to the issue of malice, which is no longer at issue following this Court's decision in Cordero Garcia. And they also raised issues regarding a pending proceeding, which is also not at issue following the Supreme Court's decision in Pugin. A few things that I'd like to point out in relation to their argument, though, is that in Pugin, the Supreme Court identified witness tampering as a kind of obstruction of justice. When they were discussing the — the meaning of obstruction of justice, they pointed to definitions that referred to merely influencing a witness. The notion that this Court could then look at the word dissuade and find that that outside of what they've already said in Cordero Garcia and outside of what the Supreme Court has said in Pugin is — it simply can't occur here. The — Can I ask you just a clarifying question? So your argument is that even though footnote 3 says Cordero Garcia does not argue that the State statute's prohibition of dissuading a witness is broader, you're saying that the Court in finding a categorical match would have had to effectively make a decision on actus rea and mens rea, and that statute was persuading or — what is it? Preventing or dissuading. So you're saying our Ninth Circuit panel there addressed both the dissuading point and the actus rea's point? Is that your argument? That it necessarily would have had to render a ruling on that? It did, Your Honor, because it was making the determination that there is a match here. In order to make that determination, the Court identified this as a potential issue and said, no, it is not a problem here. And one of the — one of the reasons for that is, as Cordero Garcia and Pugin pointed out, the Petitioner has been talking about having a categorical match. And a match between obstruction of justice and the statute of conviction in this case is not what's required due to the relating-to language. Pugin and Cordero Garcia explain that you don't need an obstruction of justice offense. You need an offense that has a connection to obstruction of justice. So even if there were some type of mismatch and the government maintains that there is not a mismatch, the relating-to language helps to broaden what the Court would be looking at in finding that the statute of conviction in this case is an offense relating to obstruction of justice. I would also point out the courts in Cordero Garcia, at the end of the decision, points out that anybody who specifically intends to engage in the actus reus prohibited by this statute, which the Court explains is any conduct toward — geared toward impeding a person from reporting a crime, that that is relevant to the case here. And they use that as a basis for coming to the conclusion that the statute of conviction is an offense relating to obstruction of justice. Moving on to the inadmissibility ground, which was used for denying adjustment of status here. There's no question that the petitioner received a three-year prison sentence for his obstruction of justice conviction. And then the petitioner received a two-year sentence for illegally possessing ammunition after he had his probation revoked. The — Are you saying that? You're saying that the sentence wasn't imposed until his probation was revoked? Well, they suspended — the sentence was suspended. That's a different matter. Yes. That was imposed but suspended on condition of probation. Exactly. And so then the length of the — and the length of the sentence ultimately amounted to two years, and the Court had to make that sentence based on the circumstances that existed when probation was granted. So the — Please respond to your opposing counsel's argument that the sentence was never suspended. That's what he's claiming. Never imposed. Never imposed. Okay. But also, because it was never imposed, it was never suspended. The — so let me — when he pled guilty to the — to violating — when he pled guilty to illegally possessing ammunition, the Court ordered the imposition of sentence suspended, placed him on probation, and then he received a two-year prison sentence not for violation — not for violating his probation, but for violating — for his December 15, 2009, conviction by guilty plea for illegally possessing ammunition. That's on the same pages that the Court had pointed out before, 15 — AR-15-28-29. So let's say he had just gotten probation, right? And he had not gotten a two-year sentence imposed or suspended. Then when he came in for that violation of probation, the judgment he would have gotten would have been a violation of probation judgment, right? It would not have been a judgment that says this is your sentence for your underlying 1231 offense. That's a different snap-out that the superior courts give for a probation violation versus an actual original sentence, right? I mean, this — this judgment specifically says that two years is for PC-12316B1, principal count. Exactly. I mean, I think that that is the — that is the crux of the issue here. He was not being — he was not given a prison sentence for violating his probation. He was given a prison sentence for illegally possessing ammunition. That — that is the — that is the issue here. Could you give me the page citation on the record about the imposition of the sentence for two years? I think it would be 1528. So look at 1527 through 1529. That is what I have in my notes here. I'm looking at 1529. It says, Probation having been formally revoked, the previous restitution fine of $200 suspended per PC-1202.44 is now due. And then — So, I mean, it — it's all consistent with what Judge Baez said, that the sentence was suspended, and because he violated his probation, now that suspended sentence, including the restitution fine, is now being imposed. Yes, Your Honor. Yes, Your Honor. He — I mean, he did not — he did not receive a two-year prison sentence just for violating his probation. This is due to him illegally possessing ammunition, then being unable to comply. I'm reading 1529, commitment to the Department of Corrections and Rehabilitations for the middle sentence. He didn't get the lower sentence. He didn't get the upper sentence. He got the middle sentence for an indeterminate term of two years on count two. Right? And count two — That's the principal count. Yes. That's the ammunition count. Exactly. Count two is illegally possessing ammunition. Then he got probation, so he wouldn't have to serve the sentence. And then he got violation of probation, so the sentence was executed. Exactly. Exactly. Does the Court have other questions about that point? And I guess the only other thing I would point out is that that is the only issue that the Court can reach regarding the adjustment of status denial. The petitioner raised arguments about his false claim to citizenship, which he actually admitted in removal proceedings, but the agency did not rely on that when they denied adjustment of status and instead looked to the criminal grounds that prevented him from adjusting. I would also point out to the Court that this whole predicament is the petitioner's own doing. He entered the United States as a refugee. He engaged in years of criminal activity. He's a known gang member. He maintains that he is not a gang member, but DHS has — But that issue is not before us, right? Exactly. I'm not sure why you continue to raise his gang membership when it's not really relevant to the issues we're looking at. The reason that I bring it up, Your Honor, is that he was making an equitable estoppel argument in his opening brief, and so I point out the equities for the purposes of his equitable estoppel claim. And if there's nothing more, the Court should deny the petition for review. Thank you. Mr. Feinzig, you exceeded your time. I'll give you one minute. Thank you again, Your Honor. To start quickly on the inadmissibility question, there is a fundamental difference under the INA between a sentence of incarceration being suspended and the imposition of a sentence of incarceration being suspended. The latter happened in this case. The sentencing documents reflect as much. Again, we would refer you back to the definition of sentence in the INA. It sets up two, not four, grammatical possibilities. It only refers to counting a sentence when it is imposed at the outset, and then that sentence is suspended. As to whether we rate — That's what happened here. Respectfully, no, Your Honor. There is a distinction. And the Court only imposed probation and then after the violation of probation imposed the sentence. So the sentence of incarceration, the imposition of the sentence of incarceration was suspended. I see my time is running. I would just say quickly as to the Actus Reis theory, as to Subdivision B, we did raise that argument. I direct the Court to pages 19, 20, 21, and 37 of our opening brief. You know, I'm just going to say one thing. The INA at 1101 says, Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part. I understand your position. You don't think a sentence was ever suspended or imposed, but I think that language for me is fairly clear. Again, we read that to set up the suspension of the imposition of imprisonment or suspension of the execution of a sentence, which doesn't capture what happened in this case. Thank you very much, Your Honor. Thank you. The case has been submitted.
judges: BEA, LEE, KOH